## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN O'NEIL, APPELLANT.[*]

*Examination of a juror — inquiries may be made as to his state of mind as tending to show his ability to give particular evidence its legitimate weight—the direct testimony of an accomplice on the trial is not subject to the rules applicable to a confession — evidence of the proceeding in an action is admissible, as against a party to it, on his prosecution for a crime — proof of acts, subsequent to the time of the alleged crime, is admissible to show a previous conspiracy— the crime of bribery is proved if the defendant was influenced by the bribe to do his duty — evidence as to the financial condition of the defendant, when inadmissible—the testimony of a witness who has been convicted of perjury is admissible under section 714 of the Penal Code—the court is only required to instruct the jury upon legal propositions — the difference between the character of the corroborative evidence required to sustain a confession and the testimony of an accomplice stated.*

Upon the trial of the defendant under an indictment charging the crime of bribery, in combining with other aldermen in agreeing to accept, and in accepting, the sum of $500,000 from the Broadway Surface Railroad Company for granting to it the franchise to construct and operate a railroad on Broadway, the defendant claimed that the only inquiry as to the competency of jurors which could be made was, as to whether they stood indifferent as between the plaintiff and

---

[*] Decided June, 1887. The judgment of the General Term in this case was affirmed in the Court of Appeals of April 10, 1888, in which ANDREWS, J., says: "There are many questions which have been presented on the argument here in behalf of the appellant, arising on exceptions on the trial. They have been very fully considered in the able opinion of Judge VAN BRUNT. We concur in the conclusions of the General Term, and shall confine ourselves to a brief reference to some of the questions pressed upon our attention."

the defendant, and that the peculiar nature of the evidence intended to be given upon the part of the prosecution, or of the defense upon the part of the defendant, could not be called to the attention of a juror for the purpose of ascertaining whether, in view of such evidence or such defense, the juror was without bias.

*Held,* that it was not necessary to discuss this question, as the propriety of making such an inquiry had been expressly decided by the Court of Appeals in the *People* v. *Carpenter* (102 N. Y., 239).

Upon the trial Fullgraff, one of the members of the board of aldermen, was called by the prosecution and testified, in substance, that the members combined and conspired with the defendant to grant the franchise, and that, as a result of such combination and conspiracy, the defendant, as well as other members, agreed to, and did, receive the sum of $20,000. The defendant moved to strike out the testimony of the witness, upon the ground that such testimony was in the nature of a confession, as it corresponded substantially with statements which the witness was induced to make to the district attorney by the promise of immunity.

*Held,* that while a confession, induced by a promise of immunity and reward, cannot be introduced in evidence, as against the party making the confession, no rule of law has, as yet, been laid down that an accomplice is not a compe_tent witness on behalf of the prosecution for the purpose of aiding in establishing a case against the defendant.

That evidence, as to the conduct and management of an action brought against the Mayor, Aldermen and Commonalty of the City of New York, in which an injunction had been obtained against the defendant as an alderman of the city, was properly received on the trial, and that if the defendant desired to show that he was not aware of the steps taken, in the litigation to which he was a party, it was for him to show his ignorance.

That the people had a right, for the purpose of showing the previous agreement, to show the transactions of the defendant and his accomplices, subsequent to the time of the commission of the offense as alleged in the indictment, which were consistent with the existence of the previous agreement, and from which the previous agreement might be inferred, for the reason that, upon proof that a man has taken a bribe, it is not difficult to infer that he has agreed to be bribed.

That the evidence given upon the trial was sufficient to prove the offer of the Broadway Surface Company to pay $500,000 for the franchise, and the acceptance of that sum by the members of the board of aldermen.

Upon the trial testimony as to the opinions of taxpayers and property owners in respect to the policy of building a Broadway road, except in those cases in which it was shown that the opinion of the taxpayer or property owner was communicated to the defendant, was excluded.

*Held,* that it was properly excluded, as the crime of bribery is just as much proved by showing that the officer bribed does his duty under the influence of a bribe, as though he was shown to have violated his duty under the same influence.

That it was not error to exclude evidence showing the financial condition of the defendant, the sources of his income, and his income and financial condition

during the years 1884 and 1885 in detail, as the condition of the defendant's business, the character of his customers and the sources of his income, could reflect no light upon the question which was being investigated by the jury.

That the court did not err in refusing to charge the jury that, in consequence of the different statements which Fullgraff and Duffy had made under oath, in respect to the matter as to which they testified on the trial, it must disregard their testimony.

That whatever may have been the rule in relation to the credit to be given·by a jury to the testimony of a witness, whom they found to have sworn falsely in reference to the subject-matter under examination, prior to the adoption of the Penal Code, it is no longer the right of a party to have the jury charged that the evidence of such witness must be rejected, as section 714 of that Code makes it competent for a witness, although previously convicted of perjury, to go upon the stand and testify.

*People* v. *Petmecky* (99 N. Y., 421) distinguished.

That a claim made by the defendant's counsel that the court erred, in refusing to charge what particular weight was to be given to particular parts of the testimony was not well taken, as the court was only required to give the jury instructions upon legal propositions, and not as to the weight which they should give to isolated portions of the testimony.

That the nature of the corroborative evidence which is required where a conviction is sought upon a confession, is different from that which is required when the conviction is sought upon the testimony of an accomplice. In the first case there must be additional proof that the *crime was committed ;* in the second there must be other evidence *tending to connect the defendant* with the commission of the crime.

That there was sufficient evidence in this case, other than that of Fullgraff and Duffy, to connect the defendant with the commission of the crime.

*People* v. *Jaehne* (103 N. Y., 182) followed.

The *corpus delicti* cannot be entirely established by a confession ; but it may be established by the testimony of an accomplice.

Appeal from a judgment of the Court of Oyer and Terminer, convicting the defendant of the crime of bribery.

The charge contained in the indictment arose out of transactions alleged to have taken place in obtaining the consent of the common council of the city of New York to the construction and operating of a surface street railroad, between the Battery and Fifteenth street.*

During the examination of proposed jurors the district attorney was permitted to put to them substantially the following question : "The prosecution propose to call as witnesses two persons who were members of the board of aldermen of 1884, and who have turned

---

* See for a detailed statement of the facts *People* v. *Sharp*, 45 Hun, 465.

State's evidence, and the prosecution proposes to use those persons as witnesses in this case, and it is supposed that they will testify that they were engaged with this defendant in the transaction out of which this indictment arose. Does your prejudice against persons so testifying amount to so much that it would prevent your giving their evidence whatever weight it might be entitled to in law."

To this question the counsel for the defendant in each instance specifically objected as "immaterial, irrelevant and incompetent," which several objections were overruled, to which the defendant severally duly excepted. Rudolph A. Fullgraff and Michael Duffy testified in substance that as members of the board of aldermen and common council of 1884, they combined and conspired with the defendant to grant the franchise prayed for, to the "Broadway Surface Railroad Company," and that as a result of such combination and conspiracy and incident thereto, the defendant as well as themselves agreed to receive and accept the sum of $20,000 each, to influence their votes and action in favor of the granting of such franchise to the said "Broadway Surface Railroad Company." The witnesses Fullgraff and Duffy each severally testified that, prior to their acceptance by the district attorney as witnesses for the people, promises of immunity and other inducements were held out and made to them, in consequence of which they each made statements to that officer while in custody of the inspector of police, which statements substantially conformed with the evidence they gave upon the trial of this case.

*Charles W. Brooke* and *Peter Mitchell*, for the appellant.

*Delancy Nicoll*, for the respondent.

VAN BRUNT, P. J.:

Various grounds of error have been assigned by the defendant upon this appeal, which grounds relate to the method of the examination of jurors as to their competency, to the admission of evidence, to the denial of motions to strike out evidence and to the charge of the court. It is urged upon the part of the defendant that the only inquiry as to the competency of jurors which can be made relates to the fact as to whether they stand indifferent as between the people and the defendant, and that the peculiar nature of the evidence upon

the part of the prosecution, or of the defense upon the part of the defendant cannot be called to the attention of the juror for the purpose of ascertaining whether in view of such evidence or such defense the juror is without bias.

It does not seem at all necessary to discuss this proposition, in view of the decision of the Court of Appeals in the case of the *People* v. *Carpenter* (102 N. Y., 239), where the existence of the state of mind on the part of the juror, in reference *to the case* or *to either party*, is expressly held to be a proper subject of inquiry, in order that it may be ascertained as to whether the juror has actual bias or not.

It was claimed, upon the part of the defendant, that the court erred in denying the motion to strike out the testimony of the witness Fullgraff upon the ground that such testimony was in the nature of a confession, and was induced by the promise of immunity, and was, therefore, incompetent and inadmissible. It is undoubtedly true that a confession induced by promise of immunity and reward cannot be introduced in evidence as against the party making the confession. But no rule of law has yet been established to the effect that an accomplice is not a competent witness, on behalf of the prosecution, for the purpose of aiding in establishing the case against the defendant. The testimony of Fullgraff was in no sense a confession. It was his deliberate statement upon the stand. He was being examined as a witness, and as a witness he testified. It is undoubtedly true that, under the circumstances of the case, his evidence could not be used as against himself; but it is difficult to see why his evidence was not competent as against the persons who were engaged with him in the commission of the crime for which the defendant was indicted.

It would seem, from the authorities cited in support of this proposition by the learned counsel for the defendant, that they have misapprehended the distinction between the evidence of a confession and evidence in chief. The testimony of Fullgraff, as has already been said, was in no respect a confession. It was the testimony of a witness given upon the stand voluntarily. It is true that Fullgraff might have refused to answer the questions put to him upon the ground that he might criminate himself; but answering as a witness, his evidence was entitled to go to the jury, to be given by

them such weight as the evidence itself and the character of the witness justified.

The objection to the evidence of Charles B. Waite seems to be without force, because his evidence, as far as objected to, was entirely immaterial; and in no respect could have possibly injured the defendant.

The claim that such exception covers the entire evidence as to what Maloney did at the office of the Broadway Railway Company, and at the office of the counsel of that company, cannot be sustained, because the exception did not pretend to extend its effect any further than to the questions which had previously been asked, and to which the exception had specifically been taken.

The objection to the evidence of C. B. Alexander is equally without force, because his testimony related to the settlement of a suit to which the defendant O'Neill was a party. The defendant was one of the aldermen of the city of New York, and the mayor, aldermen and commonalty were parties to that litigation. The injunction granted in that action restrained them from acting, and immediately upon the settlement of the litigation the defendant appeared at the meeting and voted. It is to be presumed that he must have heard of the dissolution of the injunction, rather than to assume that by his action he intended willfully to violate the order of the court. O'Neill being a party to this litigation, all evidence of its conduct and management was competent, and if he desired to show that he was not aware of those steps being taken, in the litigation to which he was a party, it was for him to show his ignorance.

It is further urged that the court erred in admitting evidence of transactions subsequent to August 30, 1884, the date laid in the indictment as that upon which the offense is alleged to have been committed. It is a familiar rule of evidence that from subsequent action the jury has the right to infer the existence of a pre-existing fact. For example, the declarations and conduct of two men may be received in evidence for the purpose of showing that at some prior date an agreement of copartnership was entered into between them. So in the case at bar, for the purpose of showing the previous agreement in reference to the subject-matter of this indictment, the people had a right to show the subsequent action of the

defendant and his accomplices, which was consistent with the existence of the previous agreement, and from which the previous agreement might be inferred, because upon proof that a man has taken a bribe, it will not be difficult to infer that he had agreed to be bribed.

The claim made upon the part of the defendant's counsel that there was no proof establishing the crime, such as the law requires, before a conviction could be properly had upon this indictment, seems to be founded upon the fact that there was no proof in the evidence, other than Jaehne's assertion, that the Broadway Surface Company offered $500,000 for the franchise, and there being no proof of authority for any such statement, nor suggestion of any communication emanating from the company, and that therefore no inference could be drawn that any such offer had been made upon the part of the Broadway Surface Company, but rather that it was an attempt on the part of some of the aldermen to form a combination for the purpose of compelling, illegally and corruptly, the payment of money to them, and that this pretense of an offer was a part of their scheme to collect money from these railroads, and that they sought to secure the co-operation of their fellows through the means of these representations.

It seems, when we consider the nature of this meeting, the object for which it was called together, the circumstances surrounding the parties, and the statements which were made in regard to the offers of the various rival companies, that each one of these men who participated in this meeting understood these statements to be made by and with authority at the time they were made; and that their agreement to accept the $500,000, being $22,000 apiece for each of their votes, was understood between these parties to be the acceptance of a *bona fide* offer for the purchase of their votes, especially taken in connection with the discussions at the subsequent meeting at which a treasurer was appointed, and the meeting at which the amount to be received was reduced in consequence of certain expenses which were required to be paid out of the money. The fact that Jaehne was authorized to make this proposition seems reasonably well established, when we consider the evidence showing that some of these conspirators received the sums of money which fell to their share upon a division of the sum agreed to be paid.

It is urged that there was no proof of a mutual agreement between these parties. But it is difficult to understand how such large sums of money could be paid, as was established by the evidence in this case, unless somebody had agreed to pay them. It is entirely immaterial, for the purpose of establishing the charge as against this defendant, that the identity of the person promising should be proved. It is sufficient, if the agreement to accept a bribe is proved with some person, no matter who.

The objection to the exclusion of testimony as to the views of property holders and taxpayers in respect to the policy of the building of a Broadway road is not well taken. The crime of bribery is just as much proved by showing that the officer bribed does his duty under the influence of a bribe, as though he was shown to have violated his duty under the same influence. In every case in which it could be shown that the opinion of the taxpayer or property owner was communicated to the defendant, such evidence was admitted, and only in those cases where no such communication was proved were the opinions of the witnesses in this regard excluded.

It becomes now necessary to consider an exception to which the attention of the court was directed, and which seems to have been inserted in the points expressly to mislead the court. In the tenth point the learned counsel say that the court erred in excluding the testimony of the defendant as to his object and purpose in voting for the granting of the franchise to the Broadway Surface Railroad Company. In support of this proposition the attention of the court is called to the pretended fact that the defendant, during the course of his examination, had, in reply to certain inquiries, said that he had voted twice in the board of aldermen in favor of granting such franchise, and that thereupon he was asked the following question: "Will you state the object and purpose of your voting upon each of these occasions?" and this question was objected to, the objection sustained, and an exception taken.

The counsel then say : " Surely nothing could be more pertinent to the inquiry under the indictment than this evidence. The corrupt motive of the defendant in giving this vote upon this franchise was the most material allegation of the indictment. The jury were charged to investigate it as they were compelled to any other fact in the case ; who as matter of fact could describe and inform them

as to such motive better than the defendant. He certainly had the right to explain and characterize his motive. The jury might or might not believe him. The evidence certainly was competent. Its weight was for the jury to determine and the court erred in excluding it." It is thus apparent that the intention of the counsel was to convey to the mind of the court the impression that the defendant had been prevented from explaining and characterizing his motive in voting for the granting of this franchise to the Broadway Surface Railroad Company. When this exception was presented by the counsel, in his argument and upon his points, it struck the court as being one of great magnitude and possibly of grave error. Upon an examination of the record, however, it will be seen that this question had not the slightest relation to any such subject, and that in a subsequent part of his examination the witness was asked the question: "Will you be kind enough to state to the jury what your reason was in casting your vote in favor of the franchise referred to?" which question was answered at length by the witness, he giving a full explanation of the motives which induced him to cast his vote for the franchise. The exclusion of the evidence to show the financial condition of the defendant, the sources of his income, and his income and where his customers resided along the line of the road, and his financial condition during the years 1884 and 1885, in detail, was not error. The condition of the defendant's business, the character of his customers, the sources of his income could reflect no light upon the question which was being investigated by the jury. If there had been any claim upon the part of the people that this defendant had exhibited any sudden increase of wealth, then this evidence might have been competent for the pur- pose of accounting for whatever money he might be possessed of.

Various exceptions were taken to the charge of the court in reference to the weight to be given by the jury to the evidence of Fullgraff and Duffy. These exceptions it is not necessary to consider in detail. Even though the learned court during the course of his charge may have used expressions in reference to this evidence which were not entirely justified by the law; upon the attention of the court being called to this language, by the taking of exceptions, the court distinctly instructed the jury that he left it

entirely to them what to do with the testimony in question. And thereafter the contention of the counsel for the defendant upon the subject of this evidence was entirely devoted to the establishment of their right to have the court charge that the jury in consequence of the different statements which Fullgraff and Duffy had made, in respect to this matter under oath, must disregard their testimony. This the court refused to do, and rightly so. Whatever may have been the rule in relation to the credit to be given by a jury to the testimony of a witness whom they find to have sworn falsely in reference to the subject-matter under examination, prior to the provisions of the Penal Code, it is no longer the right of a party to have the jury charged that the evidence of such witness must be rejected. That rule was entirely applicable to the condition of the rules of evidence at a time when a conviction for perjury rendered ineligible as a witness, the person so convicted. But section 714 of the Penal Code seems to have reversed the law as previously existing, since it provides that a man convicted of *any crime* is a competent witness in any cause or proceeding, civil or criminal, but the conviction may be proved for the purpose of affecting the weight of his testimony. This provision makes it competent for a witness although having been previously convicted of perjury, to go upon the stand and testify. Such evidence goes to the jury and cannot be taken from their consideration by the court, although the conviction may be proved for the purpose of affecting the weight of such testimony. In the case at bar, therefore, although Fullgraff and Duffy had in another proceeding given testimony different from that which they gave upon the trial of the defendant, they were not incompetent witnesses. Their evidence could be considered by the jury, their credibility, however, being affected by the fact of their having previously testified differently.

It is true that in the case of the *People* v. *Petmecky* (99 N. Y., 421), the language of the court might seem to justify the adherence to the rule existing previous to the change in respect to the disqualifying effect of a conviction for perjury. But as the question was not considered by the court, it cannot be held to have been adjudicated upon. The learned court, therefore, having left the whole question entirely to the jury, as to what weight they would give to this testimony of Fullgraff and Duffy, did all that it was required

to do by reason of any exception which was taken upon the part of the defendant's counsel.

The exception to the charge of the court in respect to the evidence of Katie Metz seems to be based upon the ground that the instructions of the court to the jury were that they might consider whether her evidence did or did not tend to corroborate the testimony of Fullgraff and Duffy, not only that meetings were held at McLaughlin's house, but that they were of the corrupt character testified to by them.

This is evidently a forced construction of the language used. It was not the intention of the court to instruct the jury that anything that Katie Metz could testify to, corroborated Fullgraff and Duffy as to what transpired at the meetings themselves, but simply that it corroborated them as to the fact of the holding of the meetings, which they, Fullgraff and Duffy, had testified to as being of the corrupt character specified. This was the clear meaning of the proposition of the court, and it was undoubtedly so understood by the jury, as there was no pretense that the witness Katie Metz knew anything as to what transpired at these meetings, the whole purport of her testimony being to show that meetings were held, not to prove what occurred at those meetings.

The claim of the defendant's counsel that the court erred, in refusing to charge what particular weight was to be given to particular parts of the testimony, is not well taken, because the court was required only to give the jury instructions upon legal propositions, and not as to the weight which they should give to isolated portions of the testimony.

The only remaining exception to be considered is that in regard to the question of corroboration; and in view of the decision of the Court of Appeals in the case of the *People* v. *Jaehne* (103 N. Y., 182), this question does not seem to be open for discussion.

It is true that the nature of the corroboration, where a conviction is sought upon the testimony of accomplices, varies somewhat from a case in which conviction is sought upon the confession of the defendant. But it would seem that the corroboration in the former case might be of a less substantial character than in the latter.

A conviction cannot be had upon the confession of a defendant without additional proof that the crime charged had been committed.

The evidence in the Jaehne case was held by the Court of Appeals to contain additional proof that the crime charged had been committed, and therefore the conviction, upon the confession of the defendant, was upheld.

. A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. The distinction between the two matters of corroboration is apparent. In the case of a confession there must be additional proof that the crime has been committed. In the case of a conviction upon the testimony of an accomplice, there must be other evidence tending to connect the defendant with the commission of the crime. The *corpus delicti* cannot be entirely established by a confession; but it may be established by the testimony of an accomplice, and therefore, if there was corroborative evidence in the case of Jaehne tending to show that the crime with which he was charged had been committed, there was certainly evidence in the case at bar, other than that of Fullgraff and Duffy, tending to connect the defendant with the commission of the crime because the evidence in the case of Jaehne other than his confession, which proved that the crime charged had been committed, necessarily included all the persons engaged in the commission of that crime with it.

It would therefore seem to be entirely unnecessary, in view of the decision of the Court of Appeals in that case, to discuss the proposition as to whether there was the additional proof connecting the defendant with the commission of the crime which the statute requires.

The judgment appealed from should be affirmed.

BRADY and BARTLETT, JJ., concurred.

Judgment affirmed.